O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARIA CASTRO DE JESUS,              )    NO. EDCV 07-1247-MAN
                                    )
            Plaintiff,              )
                                    )    MEMORANDUM OPINION
        v.                          )
                                    )    AND ORDER
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
            Defendant.              )
_____)

        Plaintiff filed a Complaint on October 10, 2007, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's application for supplemental security income ("SSI").  On
January 7, 2008, the parties consented to proceed before the undersigned
United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The
parties filed a Joint Stipulation on July 8, 2008, in which:  plaintiff
seeks an order reversing the Commissioner's decision and awarding
benefits or, in the alternative, remanding the matter for further
administrative proceedings; and defendant seeks an order affirming the
Commissioner's decision.  The Court has taken the parties' Joint
Stipulation under submission without oral argument.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On June 9, 2003, plaintiff filed a prior application for SSI, which was denied initially, upon reconsideration, and by Administrative Law Judge F. Keith Varni ("ALJ Varni") in a written decision dated January 18, 2005. (Administrative Record ("A.R.") 57-64.) Plaintiff did not appeal ALJ Varni's decision.

On March 8, 2005, plaintiff filed another application for SSI, alleging an inability to work since May 1, 2003, due to depression. (A.R. 94-96, 99, 105.) Plaintiff has no past relevant work.[1] (A.R. 23, 105.)

The Commissioner denied plaintiff's application initially (A.R. 75-79) and on reconsideration (A.R. 68-73). On February 8, 2007, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Thomas J. Gaye ("ALJ"). (A.R. 205-14.) On March 29, 2007, the ALJ denied plaintiff's claim in a written decision. (A.R. 17-24.)

Thereafter, the Appeals Council received from plaintiff a timely request for review of the ALJ's decision, along with additional evidence, *i.e.*, a two-page work capacity evaluation form, dated March 14, 2007, from Imelda Alfonso, M.D., who plaintiff claimed was her treating psychiatrist. (A.R. 10, 203-04.) The Appeals Council made this additional evidence part of the record. (A.R. 9.) After

---

[1]   Plaintiff last worked as a seamstress in 1980. (A.R. 105.)

2

consideration of this new evidence, the Appeals Council concluded that it did not provide any basis to overturn the ALJ's decision. (A.R. 4-6).

**SUMMARY OF ADMINISTRATIVE DECISION**

In his written decision, the ALJ found that plaintiff has not engaged in substantial gainful activity since May 1, 2003, the alleged disability onset date. (A.R. 19.) The ALJ further found that plaintiff's only "severe" impairment is an "affective disorder." (A.R. 20.)

The ALJ determined that plaintiff has the residual functional capacity to perform a full range of exertional work, but she is "moderately limited in her ability to carry out detailed instructions and mildly limited in concentration. [She] is literate in Spanish, but has limited English capability." (A.R. 20.)

Based on a review of the evidence, the ALJ determined that plaintiff "has not met her burden of proof in overcoming the continuing presumption of nondisability raised by the administrative law judge decision of January 18, 2005." (A.R. 22.)

Having considered plaintiff's age, education, work experience, and residual functional capacity, and in reliance on testimony from a vocational expert, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, such as a hand packager, cleaner, and dining room attendant. (A.R. 23.)

1   Accordingly, the ALJ concluded that plaintiff has not been under a
2   disability, as defined in the Social Security Act, since March 8, 2005,
3   the date the application was filed.  (A.R. 24.)

4

5                        **STANDARD OF REVIEW**

6

7        Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's
8   decision to determine whether it is free from legal error and supported
9   by substantial evidence in the record as a whole.  <u>Orn v. Astrue</u>, 495
10  F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant
11  evidence as a reasonable mind might accept as adequate to support a
12  conclusion.'"  *Id.* (citation omitted).  The "evidence must be more than
13  a mere scintilla but not necessarily a preponderance."  <u>Connett v.</u>
14  <u>Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003).  While inferences from the
15  record can constitute substantial evidence, only those "'reasonably
16  drawn from the record'" will suffice.  <u>Widmark v. Barnhart</u>, 454 F.3d
17  1063, 1066 (9th Cir. 2006)(citation omitted).

18

19       Although this Court cannot substitute its discretion for that of
20  the Commissioner, the Court nonetheless must review the record as a
21  whole, "weighing both the evidence that supports and the evidence that
22  detracts from the [Commissioner's] conclusion."  <u>Desrosiers v. Sec'y of</u>
23  <u>Health and Human Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also*
24  <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is
25  responsible for determining credibility, resolving conflicts in medical
26  testimony, and for resolving ambiguities."  <u>Andrews v. Shalala</u>, 53 F.3d
27  1035, 1039-40 (9th Cir. 1995).

28

4

1    The Court will uphold the Commissioner's decision when the evidence
2    is susceptible to more than one rational interpretation.   <u>Burch v.</u>
3    <u>Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).   However, the Court may
4    review only the reasons stated by the ALJ in his decision "and may not
5    affirm the ALJ on a ground upon which he did not rely."   <u>Orn</u>, 495 F.3d
6    at 630; *see also* <u>Connett</u>, 340 F.3d at 874.   The Court will not reverse
7    the Commissioner's decision if it is based on harmless error, which
8    exists only when it is "clear from the record that an ALJ's error was
9    'inconsequential to the ultimate nondisability determination.'" <u>Robbins</u>
10   <u>v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v.</u>
11   <u>Comm'r</u>, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* <u>Burch</u>, 400
12   F.3d at 679.

13

14                                **DISCUSSION**

15

16       Plaintiff alleges the following four issues:  (1) whether the ALJ
17   properly developed the record; (2) whether the Appeals Council properly
18   considered the treating psychiatrist's opinion; (3) whether the ALJ
19   properly considered the clinical global assessment of functioning
20   ("GAF") scores; and (4) whether the ALJ posed a complete hypothetical
21   question.[2]  (Joint Stipulation ("Joint Stip.") at 2-3.)
22   ///
23   ///
24   ///
25   ///
26   _____

27   [2]    Plaintiff's arguments regarding development of the record and the
     ALJ's failure to consider the 2002 and 2003 GAF scores assigned by a
     social worker, appear to ignore the *res judicata* effect of ALJ Varni's
28   2005 decision.

                                    5

**I.    Plaintiff Failed To Rebut The Presumption Of Continuing Non-Disability, And The ALJ Had No Duty To Develop The Record.**

Although applied less rigidly to administrative than to judicial proceedings, principles of *res judicata* nevertheless apply to administrative decisions. *See* <u>Lester v. Chater</u>, 81 F.3d 821, 827 (9th Cir. 1995); <u>Chavez v. Bowen</u>, 844 F.2d 691, 693 (9th Cir. 1988); <u>Lyle v. Sec'y of Health and Human Servs.</u>, 700 F.2d 566, 568 (9th Cir. 1983). A final determination that a claimant is not disabled creates a presumption that the claimant retains the ability to work after the date of the prior administrative decision. *See* <u>Schneider v. Comm'r of Soc. Sec. Admin.</u>, 223 F.3d 968, 973 (9th Cir. 2000); <u>Lyle</u>, 700 F.2d at 568. This presumption of continuing non-disability may be overcome by a showing of "changed circumstances." *See* <u>Lester</u>, 81 F.3d at 827; <u>Chavez</u>, 844 F.2d at 693.

If a claimant does not meet her burden to adduce "proof of change" in her medical condition or other "changed circumstances," such as a new medically-determinable impairment, an increase in the severity of an existing impairment, or a change in her age category, the Commissioner is not obliged to make a "de novo" determination of non-disability, even when the burden of establishing disability otherwise would fall to the Commissioner. *See* <u>Booz v. Sec'y of Health and Human Servs.</u>, 734 F.2d 1378, 1379-80 (9th Cir. 1984)(holding that the burden to prove disability remained with the claimant and did not shift to the Commissioner at step five, as it normally does, because the unappealed denial of the claimant's earlier application created a presumption of non-disability that must be overcome by the claimant's showing of

changed circumstances, and where the ALJ permissibly concluded the claimant had produced no reliable medical evidence that he was disabled, the claimant had not met that burden); Lyle, 700 F.2d at 568-569 (holding that when the second administrative law judge properly determined the claimant had presented no evidence of changed circumstances to overcome the presumption that his ability to do light work persisted, the "absence of proof of change" was enough to meet the Secretary's burden to show the claimant could perform alternative work; the Secretary was not required "again [to] meet his burden de novo").

"In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); see also Tonapetyan v. Halter, 242 F.3d at 1150; Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983); see also 20 C.F.R. § 416.912(d). The duty is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes, 276 F.3d at 459-60; 20 C.F.R. § 416.912(e) (discussing same).

In the present case, plaintiff contends that the ALJ failed to develop the record by not obtaining an April 28, 2004 work capacity evaluation form, completed by one of plaintiff's purported treating psychiatrists, E. Prepetit, M.D., which was submitted with plaintiff's prior application for benefits but is missing from the Administrative Record. (Joint Stip. at 3-7.) However, as plaintiff has pointed to no material ambiguity in the record (and the Court has found none), and the

present record is adequate to allow for proper evaluation of the evidence, the ALJ was under no duty to further develop the record.

In his 2005 decision, ALJ Varni found that plaintiff suffered from "severe" impairments of "affective disorder" and Vicodin abuse. (A.R. 64.) In his unappealed decision, ALJ Varni expressly addressed Dr. Prepetit's opinion and stated:

> On April 28, 2004, E. Prepetit, M.D., completed [a] work capacity evaluation on behalf of [plaintiff] (Exhibit 20F, pp. 1-2). This is a checklist format style disability statement that is not accompanied with a physical or mental examination. Id.

> I have read, considered and rejected Dr. Prepetit's statement of disability in the completed mental residual functional capacity form at exhibit 20F. This is typical of those forms prepared by County doctors. It appears that Dr. Prepetit has not even seen [plaintiff] since the initial contact on June 6, 2003 note at exhibit 9F, page 9. His name never appeared in the records again and it was clear that Dr. Morales was the treating physician. Dr. Prepetit does not bother to tell the reader this in his egregiously exaggerated form at exhibit 20F. His incredible assertions are completely rebutted by the actual records showing minimal once a month treatment and consistent notation of improvement on behalf of [plaintiff].

(A.R. 61.) ALJ Varni ultimately concluded that plaintiff was capable of

performing work that existed in significant numbers in the national economy. (*Id.*)   ALJ Varni's unappealed decision became the final decision of the Commissioner and created a rebuttable presumption of continuing non-disability.

Nowhere in her portion of the Joint Stipulation does plaintiff offer evidence of changed circumstances or that her condition, *i.e.*, her affective disorder, has worsened since ALJ Varni's 2005 decision. Plaintiff asserts that the absence from the Administrative Record of Dr. Prepetit's 2004 work capacity evaluation form is "mysterious" (Joint Stip. at 6) and requires remand, because that evaluation "appears to be *consistent with* the work capacity evaluation completed by Dr. Alfonso on March 14, 2007." (Joint Stip. at 4; emphasis added.)   Assuming *arguendo* the correctness of plaintiff's contention that Dr. Prepetit's 2004 opinion is "consistent with" Dr. Alfonso's 2007 evaluation, Dr. Prepetit's previously rejected evaluation would not support the conclusion that plaintiff's condition has worsened.[3]   Indeed, plaintiff's medical records fail to demonstrate any indication of greater disability; rather, they reveal that as of March 2005, plaintiff was being seen regularly for medication management and was "stable" and "well-maintained." (A.R. 140-41.)   Plaintiff has failed to meet her burden to prove that her medical condition has deteriorated and, thus, has fallen short of rebutting the presumption of continuing non-disability.

---

[3]   Under <u>Chavez</u>, plaintiff must prove "changed circumstances" indicating a greater disability since the date of ALJ Varni's decision, *i.e.*, January 18, 2005, not since the date of plaintiff's alleged disability onset, *i.e.*, May 1, 2003, as plaintiff contends.

Accordingly, ALJ Varni's findings regarding Dr. Prepetit's opinion are entitled to *res judicata* effect, and the ALJ was under no duty to develop the record further by obtaining Dr. Prepetit's 2004 work capacity evaluation form.   The absence of this form from the current record is immaterial.

**II.   The Appeals Council Provided The Requisite Specific And Legitimate Reasons For Rejecting The Work Capacity Evaluation Form Completed By Imelda Alfonso, M.D.**

Generally, a treating physician's opinion is given greater weight because "'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)(citation omitted).   The weight given to a treating physician's opinion is directly proportional to the length of the relationship between the physician and claimant and the frequency of the examinations.   20 C.F.R. § 416.927(d)(2).   Further, a treating physician's opinion may only be given controlling weight when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and it is consistent with other substantial evidence in the record.   *Id.*   When the opinion of a treating physician is contradicted, it may be rejected by the ALJ only for "specific, legitimate" reasons, based on substantial evidence in the record. Magallanes, 881 F.2d at 751; Widmark v. Barnhart, 454 F.3d 1063, 1066-67 (9th Cir. 2006); *see* Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *see also* Batson v.

10

1   <u>Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 & n.3 (9th Cir. 2004)

2   (upholding the ALJ's rejection of an opinion that was "conclusionary in

3   the form of a check-list," and lacked supporting clinical findings);

4   <u>Crane v. Shalala</u>, 76 F.3d 251, 253 (9th Cir. 1996)(ALJ properly rejected

5   doctors' psychological evaluations because they were contained in

6   check-off forms and lacked any explanation of their bases).

7

8       Plaintiff contends that the Appeals Council improperly rejected the

9   opinion of one of plaintiff's purported treating psychiatrists, Dr.

10  Alfonso.   The Court disagrees.

11

12      The Appeals Council received from plaintiff a two-page work

13  capacity evaluation form, dated March 14, 2007, which was completed by

14  Dr. Alfonso, plaintiff's purported treating psychiatrist. (A.R. 10, 203-

15  04.)   The Appeals Council made this additional evidence part of the

16  record.   (A.R. 9.)   On this check-box form, Dr. Alfonso indicated no

17  diagnosis, but checked every box indicating "marked" limitations for all

18  16 out of 16 areas of mental functioning.[4]

19  _____

20  [4]     In this stand alone check-box form, Dr. Alfonso opined that
    plaintiff had "marked" limitations in her ability to: (1) remember
21  locations and work-like procedures; (2) understand and remember very
    short and simple instructions; (3) carry out very short and simple
22  instructions; (4) maintain attention and concentration for extended
    periods; (5) perform activities within a schedule, maintain regular
23  attendance, and be punctual within customary tolerances; (6) sustain an
    ordinary routine without special supervision; (7) work in coordination
24  with or in proximity to others without being distracted by them; (8)
    make simple work-related decisions; (9) interact appropriately with the
25  general public; (10) ask simple questions or request assistance; (11)
    accept instructions and respond appropriately to criticism from
26  supervisors; (12) get along with co-workers or peers without distracting
    them or exhibiting behavioral extremes; (13) maintain socially
27  appropriate behavior and to adhere to basic standards of neatness and
    cleanliness; (14) respond appropriately to changes in the work setting;
28  (15) be aware of normal hazards and take appropriate precautions; and

11

1    In its August 11, 2007 Notice of Appeals Council Action, the
2    Appeals Council discredited Dr. Alfonso's opinion and explained that it:

4        considered the submission from Dr. Alfonso, but cannot accord
5        it great weight.  Although Dr. Alfonso's submission is dated
6        shortly before the issuance of the Administrative Law Judge's
7        decision, the assessed limitations are not supported by
8        treatment notes.  The document consists of only a check sheet
9        with marked boxes, but is not accompanied by clinical
10       objective evidence or a diagnosis that might support the
11       ratings provided.  Moreover, in Exhibit B2E, you indicated
12       that you received your medication from Dr. Morales, your
13       treating physician.  We found that this information does not
14       provide a basis for changing the Administrative Law Judge's
15       decision.

17   (A.R. 4-5.)

19       The Appeals Council properly rejected Dr. Alfonso's opinion because
20   it was not supported by any treatment notes or objective evidence, and
21   the treatment notes in the record do not support the finding that
22   plaintiff has "marked" limitations in all 16 of 16 areas of mental
23   functioning, as Dr. Alfonso opined.  In her portion of the Joint
24   Stipulation, plaintiff failed to cite any treatment records that would
25   corroborate Dr. Alfonso's opinion.  The only evidence cited by plaintiff
26   was that she "saw *Doctor Gil* for treatment and that *Dr. Gil* prescribed

27   _____

28   (16) set realistic goals or make plans independently of others.  (A.R.
     203-04.)

12

medications for the plaintiff." (Joint Stip. at 10; emphasis added.) This evidence does nothing to support Dr. Alfonso's opinion.

Moreover, the Court is not convinced that Dr. Alfonso is properly viewed as a treating physician within the meaning of the Social Security regulations, as plaintiff contends. *See* 20 C.F.R. § 416.902 (defining "treating source" as someone who provides medical treatment or evaluation *and* who has or has had "an ongoing treatment relationship with" the claimant, which means seeing the physician "with a frequency consistent with acceptable medical practice for the type of treatment or evaluation required for" the claimant's condition). Other than on this cursory form, Dr. Alfonso's name appears nowhere in the record, and there is no apparent relationship between Dr. Alfonso and Dr. Gil. In fact, the record demonstrates that plaintiff saw Dr. Gil only once, on February 26, 2004, in lieu of seeing her actual treating psychiatrist Francisco F. Morales, M.D., with whom plaintiff consistently and regularly treated from at least August 2003, through March 2005. (A.R. 140-60.) There is no evidence that plaintiff ever treated with Dr. Alfonso, much less any evidence of an ongoing treatment relationship.

Accordingly, the Court finds no error in the Appeals Council's decision to reject Dr. Alfonso's opinion.

III. **The ALJ Was Not Required To Address Plaintiff's 2002 And 2003 GAF Scores Assigned By A Social Worker**.

An ALJ is not required to discuss every piece of evidence in the record. *See* Howard v. Barnhart, 341 F.3d 1006, 1010 (9th Cir. 2003)

13

1  ("in interpreting the evidence and developing the record, the ALJ does
2  not need to discuss every piece of evidence.") (citation omitted).  The
3  Social Security Administration's regulations state that, "[i]n addition
4  to evidence from the acceptable medical sources . . . we may also use
5  evidence from other sources to show the severity of your impairment(s)
6  and how it affects your ability to work"). 20 C.F.R. § 916.913(d).  An
7  ALJ does not commit legal error by failing to incorporate a GAF score
8  into his disability assessment.  *See* <u>Howard v. Commissioner</u>, 276 F.3d
9  235, 241 (6th Cir. 2002).

10

11  Here, the record contains an assessment, dated August 13, 2003,
12  completed by a social worker who assigned plaintiff a GAF score of 48.
13  (A.R. 155-57.)  In this 2003 assessment, the social worker also stated
14  that in 2002, plaintiff had a GAF score of 45.[5]  (A.R. 155.)

15

16  Plaintiff contends that the ALJ erred in failing to discuss the
17  social worker's 2003 assessment.  (Joint Stip. at 13.)  More
18  specifically, plaintiff argues that "[t]ogether these two GAF scores
19  clearly provide a longitudinal perspective regarding plaintiff's
20  functional status." (*Id*.)

21

22  As an initial matter, the social worker is, according to the
23  Commissioner's regulations, an "other source," whose opinion the ALJ
24  "may," but is not required to, use in assessing plaintiff's disability.

25
26  [5]  A GAF of 41 to 50 indicates "serious symptoms (e.g., suicidal
    ideation, severe obsessional rituals, frequent shoplifting) or any
    serious impairment in social, occupational, or school functioning (e.g.,
27  no friends, unable to keep a job)." American Psychiatric Ass'n.,
    <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 34 (4th ed. text
28  rev. 2000).

*See* 20 C.F.R. § 916.913(d).   Contrary to plaintiff's contention, therefore, the ALJ was not required to consider the social worker's 2003 assessment.

Moreover, the 2002 and 2003 GAF scores assigned by the social worker related to a previously adjudicated period or predated the relevant period.[6] Plaintiff has filed numerous applications prior to the current one. (A.R. 17, 57-65, 207-208.) As discussed above, her prior application was denied by ALJ Varni on January 18, 2005. (A.R. 57-64.) Thus, plaintiff's GAF scores from 2002 and 2003 related to a previously adjudicated period in which the Commissioner already found plaintiff not disabled. *Cf.* <u>Chavez</u>, 844 F.2d at 693.

Accordingly, the ALJ was not required to discuss plaintiff's 2002 and 2003 GAF scores.

---

[6]   The relevant period in an SSI disability case begins when the SSI application is filed. 20 C.F.R. § 416.202 (eligibility for SSI benefits contingent upon filing application); 20 C.F.R. § 416.501 (no payment of benefits prior to filing application). The relevant period ends with the Commissioner's final decision on the SSI application.

In this case, the relevant period was March 8, 2005 (the SSI application filing date), to March 29, 2007 (the date of the ALJ's unfavorable decision). Therefore, because plaintiff's 2002 and 2003 GAF scores predate the current application filing date by approximately a year and a half, they are not relevant to the period in question.

Moreover, as discussed in Section I, to overcome the presumption of continuing non-disability arising from ALJ Varni's 2005 decision, plaintiff must prove "changed circumstances" indicating a greater disability since the date of ALJ Varni's decision, *i.e.*, January 18, 2005, not since the date of plaintiff's alleged disability onset, *i.e.*, May 1, 2003. Thus, neither plaintiff's 2002 nor 2003 GAF scores are relevant to proving the requisite changed circumstances to overcome the presumption of continuing non-disability that arose from ALJ Varni's 2005 decision.

15

**IV.  The ALJ's Hypothetical Question To the Vocational Expert Was Proper.**

"If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the 'expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'"  Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993)(quoting DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991)). In posing a hypothetical to a vocational expert, the ALJ must accurately reflect all of the claimant's limitations.  Embrey v. Bowen, 849 F.2d 418, 422-24 (9th Cir. 1987).  However, it is proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record.  Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

Here, the ALJ asked the vocational expert the following hypothetical question:

I'll hypothecate a person of [plaintiff's] age, education, and past work experience with a moderate limitation in the ability to carry out detailed instructions, some mild trouble concentrating on tasks.  This person is literate in Spanish, can read and write, but only limited, that is less literacy in English, although some.  Could such a person find work here in Southern California?

(A.R. 212-13.)  The vocational expert responded that plaintiff could work as a hand packager, cleaner II, and dining room attendant.  (Id.)

16

Plaintiff argues that the ALJ erred by failing to incorporate into his hypothetical question to the vocational expert the mental limitations established by Drs. Prepetit and Alfonso, and plaintiff's GAF scores. (Joint Stip. at 17.) Plaintiff is mistaken.

As discussed above: (1) the ALJ was under no duty to develop the record regarding Dr. Prepetit's 2004 opinion, which was rejected by ALJ Varni in his January 18, 2005 unappealed decision; (2) the Appeals Council properly rejected Dr. Alfonso's opinion; and (3) the ALJ was not required to consider plaintiff's GAF scores from 2002 and 2003. Based on the evidence in the record, therefore, there was no error in the ALJ's hypothetical question to the vocational expert, which did not include limitations that the ALJ properly found not to exist. The ALJ's hypothetical question to the vocational expert set out all of plaintiff's limitations that were supported by the medical evidence.

Accordingly, the ALJ's finding that jobs existed in significant numbers that plaintiff could perform was based on substantial evidence and is affirmed. *See* Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that Rollins had claimed, but had failed to prove.")

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and is free from material

1  legal error.  Neither reversal of the Commissioner's decision nor remand

2  is warranted.

3

4      Accordingly, IT IS ORDERED that Judgment shall be entered affirming

5  the decision of the Commissioner of the Social Security Administration.

6

7      IT IS FURTHER ORDERED that the Clerk of the Court shall serve

8  copies of this Memorandum Opinion and Order and the Judgment on counsel

9  for plaintiff and for defendant.

10

11      **LET JUDGMENT BE ENTERED ACCORDINGLY.**

12

13  DATED: September 3, 2009

14                                    _Margaret A. Nagle_
                                    _____
15                                    MARGARET A. NAGLE
                                    UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

18